

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | |
|---|---|
| HARRIETT LOUISE LOFTIS, § | |
| Plaintiff, § | |
| vs. § | CIVIL ACTION NO. 3:18-CV-3003-MGL |
| § | |
| BI-LO, LLC, WINN-DIXIE STORES, INC., § | |
| and MCKEE FOODS CORPORATION, § | |
| Defendants. § | |

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

### I.     INTRODUCTION

Plaintiff Harriett Louise Loftis (Loftis) brought this trip-and-fall suit in the Richland County Court of Common Pleas against Defendants BI-LO, LLC (BI-LO), Winn-Dixie Stores, Inc. (Winn-Dixie), and McKee Foods Corporation (McKee), (collectively, Defendants). Defendants subsequently removed the case to this Court. The Court has diversity jurisdiction over the matter in accordance with 28 U.S.C. § 1332.

Pending before the Court is BI-LO and Winn-Dixie's motion for summary judgment, which McKee joined. Having carefully considered the motion, the response, the replies, the record, and the applicable law, the Court will grant the motion.

## II.     FACTUAL AND PROCEDURAL HISTORY

"On . . . November 22, 2016, [Loftis] was a customer in the BI-LO store located on Gamers Ferry Road in Columbia, South Carolina [(the store)], . . . which was, upon information and belief, leased from . . . Winn-Dixie by BI-LO." Complaint ¶ 5. "While [Loftis] was walking through the store and past a Little Debbie display [(the display)] maintained by . . . McKee, she caught her foot on part of the . . . display, which caused [her] to fall to the floor." *Id*. (internal quotation marks omitted).

"As a result of the above and the fall, [Loftis] suffered physical harm and injury, as well as mental duress from her injuries, all of which have caused her to undergo extensive physical and mental pain and suffering, including weeks at a rehabilitation facility, and has and will in the future cause her to have to receive and incur substantial medical services and other related services with accompanying bills." *Id*. ¶ 6.

As the Court noted, after Loftis filed this lawsuit in state court, Defendants removed it to this Court. BI-LO and Winn-Dixie then filed a motion for summary judgment, which McKee subsequently joined. Loftis filed her response in opposition and Defendants filed their replies in support.

The Court, having been briefed on the relevant issues, is prepared to adjudicate Defendants' motion on the merits.

## III.     STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file,

together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears this initial burden of informing the Court of the basis for its motions, and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The Court reviews the record by drawing all inferences most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"Once the moving party carries its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The adverse party must show more than "some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. If an adverse party completely fails to make an offer of proof concerning an essential element of that party's case on which that party will bear the burden of proof, then all other facts are necessarily rendered immaterial and the moving party is entitled to summary judgment. *Celotex*, 477 U.S. at 322–23. Hence, the granting of summary judgment involves a three-tier analysis.

First, the Court determines whether a genuine issue actually exists so as to necessitate a trial. Fed. R. Civ. P. 56(e). An issue is genuine "if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Second, the Court must ascertain whether that genuine issue pertains to material facts. Fed. R. Civ. P. 56(e). The substantial law of the case identifies the material facts, that is, those facts that potentially affect the outcome of the suit. *Anderson*, 477 U.S. at 248. Third, assuming no genuine

issue exists as to the material facts, the Court will decide whether the moving party shall prevail solely as a matter of law.  Fed. R. Civ. P. 56(e).

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327.  The primary issue is whether the material facts present a substantive disagreement as to require a trial, or whether the facts are sufficiently one-sided that one party should prevail as a matter of law.  *Anderson*, 477 U.S. at 251–52.  The substantive law of the case identifies which facts are material.  *Id*. at 248.  Only disputed facts potentially affecting the outcome of the suit under the substantive law preclude the entry of summary judgment.

## IV.    DISCUSSION AND ANALYSIS

The Court will briefly address two short isolated footnotes in the parties' submissions before it considers the substantive arguments.  The first is in Defendants' motion for summary judgment in which they halfheartedly argue "no evidence has been presented to create a nexus to this matter and summary judgment should be granted in favor of Winn-Dixie[.]" Defendants' Motion at 1 n.1.  For purposes of this motion, the Court considers this contention, only briefly mentioned in a footnote, yet not argued, to be waived.  *See Wahi v. Charleston Area Med. Ctr., Inc*., 562 F.3d 599, 607 (4th Cir. 2009) (holding an argument raised only in a footnote is waived).

The second is in Loftis's response in opposition to Defendants' motion wherein she tepidly argues it was improper for McKee to file a notice of joinder as to BI-LO and Winn-Dixie's motion for summary judgment.  Loftis's Response in Opposition at 1 n.1.  But, Fed. R. Civ. P. 10(c) allows for such a joinder: "[a] statement in a pleading may be adopted . . . in any other pleading or motion." Even if the argument had merit, however, the Court views the argument, made only in a footnote, waived.  *See Wahi*, 562 F.3d at 607 (holding an argument raised only in a footnote is waived).

The Court will begin by laying out the relevant testimony submitted by the parties.

*A.     Deposition testimony*

On the day of Loftis's fall, she and her sister, Geneva Legare Kopack (Kopack) arrived at the store around 1:30 PM.  Loftis's Dep. at 33:3.  It was the day before Thanksgiving; and the store was crowded. *Id*. at 30:18-19.

She and Kopack had been shopping for approximately one hour before Loftis fell.  *Id*. at 32:25-33:3.  Kopack was pushing the grocery cart and Loftis was walking along the right side of her. *Id*. at 35:13–36:1.

Loftis admitted she saw the display before she fell.  Loftis Dep. at 50:13-15.  In fact, when defense counsel asked Loftis whether she or her sister "reached for a Little Debbie product from the display[]" after coming upon it, she answered, "No, we just looked at it." *Id*. at 54:3-6.

Loftis stated that, when she then "walked by [the display,] . . . something . . . caught [her] foot." *Id*. at 59:9-10.  She later clarified it was her right foot that caught on the display. *Id*. at 90:12-14.

Kopack testified she "didn't see her [sister's] foot catch[.]  Kopack Dep. at 17:9.  And, although at one point in her depostion she swore she "saw [Loftis] fall[,]" *Id*. at 17:6, she later admitted she did not see her fall, *Id*. at 38:21-22.

According to Kopack,  the display "was crooked, [and] it seemed like it was a hole . . . in the bottom of the display[.]" *Id*. at 30:10-12.  More specifically, regarding the display being crooked, she stated: "Well, the display is supposed to be straight and it was crooked.  Somebody must have run into or hit it with a buggy or something, but it was crooked, and that's why she caught her foot on it." *Id*. at 20:18-21.  And, concerning the hole, she described there being "a little hole there, looked like somebody had kicked it or something. *Id*. at 38:3-5.

Jack Quince Norton Jr., the assistant manager at the store on the date of Loftis's fall, stated the display was modeled after a stylized train and contained Christmas cakes.  Norton Dep. at

5

17:2-7. Norton further testified he had "[n]ever had a problem with the Little Debbie Display." *Id*. at 24:21-22. And, when asked if someone at the store was tasked with checking on the displays, Norton answered, "Yes, sir. We usually walk the store at least once every hour to check on stuff. " *Id*. at 25:12-13.

Although not dispositive for purposes of deciding this motion, it bears noting Loftis had formerly been a BI-LO employee for over twenty years, Loftis Dep. at 19:13-14, had seen or set up similar displays "hundreds of times," *Id*. at 24:4-7, and agreed that it was not unusual for grocery stores to place displays in aisles. *Id*. 31:15-17.

With this background in mind, the Court will now consider the parties' summary judgment arguments.

> **B.     Whether Loftis has failed to provide any evidence proving the condition in question was dangerous, contained a latent defect, or hidden such that Defendants had a duty to make it safe or warn of its existence**

Defendants contend they are entitled to summary judgment because of Loftis's alleged failure to demonstrate the display was a hazard in any way. Defendants' Motion at 5. Thus, according to Defendants, they had no duty either to make it safe or to warn of its existence. *Id*.

Loftis asserts, however, that she "has presented evidence of a dangerous condition[.]" Loftis's Response in Opposition at 5. According to her, the following contributed to her fall: "the crooked angle of the display and that there was a space or hole where Plaintiff caught her foot, that the store was crowded right before Thanksgiving and the aisles full of displays" *Id.* (citations omitted) (internal quotation marks omitted).

"Although a merchant is not an insurer of the safety of his customers, he owes a duty to keep aisles and passageways in a reasonably safe condition." *Wintersteen v. Food Lion, Inc*., 542 S.E.2d 728, 730 (S.C. 2001) (citations omitted). In other words, "a business owner has a duty to take reasonable action to protect its [customers] against the foreseeable risk of physical harm." *Bass v. Gopal, Inc*., 716 S.E.2d 910, 913 (S.C. 2011).

6

When the business owner or its agents "created the condition at issue, the key question is whether [the customer] presented sufficient evidence to create an issue of fact as to whether this condition was indeed hazardous. Such evidence must show [the business owner] was negligent[.]" *Shain v. Leiserv, Inc.*, 493 S.E.2d 111, 112 (S.C. Ct. App. 1997).

"To recover damages for injuries caused by a dangerous or defective condition on a [business owner's] premises, a plaintiff "must show either (1) that the injury was caused by a specific act [or omission] of the [business owner] which created the dangerous condition; or (2) that the [business owner] had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Pringle v. SLR, Inc. of Summerton*, 675 S.E.2d 783, 787 (S.C. Ct. App. 2009) (*quoting Anderson v. Racetrac Petroleum*, Inc., 371 S.E.2d 530, 531 (S.C. 1988).

Turning to Loftis's "evidence of a dangerous condition," Loftis's Response in Opposition at 5: as to "the crooked angle of the display[,]" *id*., the only evidence in the record as to why the display was crooked comes from Kopack: "Somebody must have run into or hit it with a buggy or something, but it was crooked, and that's why she caught her foot on it." Kopack Dep. at 20:18-21. And, regarding the hole in the display, Kopack said "somebody had kicked it or something. *Id*. at 38:3-5. Defendants, however, are not liable for the actions of these "somebodies." "To require shopkeepers to anticipate and prevent the acts of third parties is, in effect, to render them insurers of their customers' safety. This is simply not the law of this state." *Wintersteen*, 542 S.E.2d at 731.

Besides that, Norton offered uncontroverted testimony he had "[n]ever had a problem with the Little Debbie Display[,]" Norton Dep. at 24:21-22, and that the BI-LO managers "usually walk[ed] the store at least once every hour to check on stuff." *Id*. at 25:12-13. There is no expert testimony suggesting Defendants should have done more, or that checking on the displays just once an hour falls below the industry standard. As such, Loftis is unable to demonstrate Defendants were negligent as to the display purportedly being crooked and having a hole in the bottom of it.

Concerning Loftis's claim that the store being crowded is evidence of a dangerous condition, she neglects to provide any expert testimony as to, for instance, how many folks could have safely been in the store to make it less dangerous and, thus, lessen the chances of her fall. Further, it appears from the record she alone decided she would shop at the crowded store the day before Thanksgiving. Thus, any harm caused by the crowd was somewhat self inflicted. And, "[t]his [C]ourt does not sit to relieve self-inflicted wounds." *Rish v. Rish*, 296 S.C. 14, 17, 370 S.E.2d 102, 104 (S.C. Ct. App. 1988) (Bell, J., concurring). Loftis's argument that the aisles of the store, which she says were full of displays, created a dangerous condition, without providing any specific evidence or argument, is also unavailing.

Consequently, the Court agrees with Defendants that Loftis has failed to provide any evidence of a hazardous condition. Thus, summary judgment is appropriate. For the sake of thoroughness, however, the Court will briefly address the other grounds Defendants offer for why they claim summary judgment is appropriate.

### C.  *Whether Loftis has failed to present any evidence proving (1) her fall was the result of a specific act or omission on Defendants' behalf, or (2) Defendants were on notice of a dangerous or defective condition*

As the Court observed earlier, "[t]o recover damages for injuries caused by a dangerous or defective condition on a [business owner's] premises, a plaintiff 'must show either (1) that the injury was caused by a specific act [or omission] of the [business owner] which created the dangerous condition; or (2) that the [business owner] had actual or constructive knowledge of the dangerous condition and failed to remedy it." *Pringle*, 675 S.E.2d at 787.

#### 1.  *Whether Loftis has offered any evidence establishing any act or omission by Defendants caused her fall*

Defendants maintain Loftis "has failed to present [any] evidence proving that any specific act [or omission] by Defendants caused her to fall[.]" Defendants' Motion at 9. Loftis counters that

Defendants neglected to inspect the display as often as they should have. Loftis's Response in Opposition at 5.

Defendants are correct. Loftis has failed to present any evidence proving her fall was the result of any of Defendants' acts or omissions. The Court's rationale for this determination is the same as it provided above. It also deals with the inspection of the display argument there. Consequently, it need not repeat the analysis here.

### 2.   *Whether Loftis has offered any evidence Defendants were on notice of a dangerous or defective condition*

Defendants next argue Loftis "has failed to present [any] evidence proving . . . that Defendants somehow were on notice of a dangerous condition." Defendants' Motion at 9. Loftis, however, claims Defendants "had constructive knowledge of the potential for this dangerous condition, and did not adequately monitor the display to prevent the space that caught . . . Loftis'[s] foot[.]" Loftis's Response in Opposition at 7. She further contends she "has shown constructive notice, from the dates, the known foot traffic, the known placement, and the[ ] known fact that it was a colorful display which would attract attention away from the bottom to the top of the display where the product was placed, and the knowledge displays get knocked around." *Id*. at 7 (internal quotation marks omitted).

Loftis does not appear to make any argument Defendants were on actual notice that the display was allegedly hazardous. And, there is nothing in the record suggesting they were. Thus, the Court concludes Defendants were not on actual notice the display purportedly created a hazard.

Turning to Loftis's constructive notice arguments, constructive notice is generally "established through evidence the [hazard was present] for a sufficient length of time that the storekeeper should have discovered and removed it." *Wintersteen*, 542 S.E.2d at 730 n.1. And, "[a]lthough mere recurrence alone is insufficient to establish constructive notice, there may be certain factual patterns . . . wherein the recurrence is of such a nature as to amount to a continual

9

condition, and that factor, when coupled with other evidence, such as store employees' knowledge thereof, may be sufficient to create a jury issue as to the defendant's constructive notice at the time of the accident." *Id*.

Again, Norton testified he had "[n]ever had a problem with the Little Debbie Display[,]" Norton Dep. at 24:21-22, and that the BI-LO managers "usually walk[ed] the store at least once every hour to check on stuff." Norton Dep. at 25:12-13. There is no lay testimony or other evidence contradicting this, nor anything to suggest how long the display had been crooked and had a hole in the bottom of it. Nor is there any expert testimony suggesting what else Defendants should have done to prevent the alleged hazard, how often they should have checked the display, or what the industry standards are as to these issues. Absent this type of evidence, Defendants are entitled to summary judgment on this ground, too.

### D.     *Whether the display was open and obvious such that Loftis had actual knowledge of the display prior to her fall*

Finally, Defendants suggest that, "[b]ecause the condition [of the display] was neither latent nor hidden, but rather open and obvious, summary judgment should be granted in Defendants' favor." Defendants' Motion at 11. Loftis argues, however, "[t]he defect of the display was not open and obvious to a normal shopper. The colorful display had product at the top and the bottom part where the hard cardboard separated to create a space that caught [Loftis's] foot, and was not open or obvious." Loftis's Response in Opposition at 7.

As a general rule, a business owner "is not liable to an invitee for an injury resulting from a danger that was obvious or that should have been observed in the exercise of reasonable care." *Larimore*, 531 S.E.2d at 539 (citation omitted) (internal quotation marks omitted). "The entire basis of [a business owner's] liability rests upon his superior knowledge of the danger that causes the invitee's injuries. If that superior knowledge is lacking, as when the danger is obvious, the invitor cannot be held liable." *Id*.

It follows, then, that the relevant inquiry is whether Loftis's view of the alleged hazard, the display, was somehow obstructed before she was about to walk by it. And, if nothing obstructed her ability to see the static display, Defendants should be able to safely assume that Loftis would see it and realize any associated risks. Where, as here, the display was perfectly obvious and apparent, so that one looking would necessarily see it, the fact Loftis still tripped over it will not relieve her from the responsibility for her misadventure.

Stated a different way, the plain, palpable, persuasive, and undisputable evidence shows that the display was open and obvious, Loftis had equal knowledge to Defendants of the alleged hazard, and any danger presented by it could have been avoided by Loftis in the exercise of reasonable care. After all, she admitted she "just looked at it[,]" Loftis Depo. at 54:6, then walked by it, and tripped over it. Given such a set of facts, it is impossible to fathom how Defendants could have any liability. Accordingly, Defendants are entitled to summary judgment on this ground as well.

"Injuries have countless causes, [but] not all should give rise to legal liability." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 692 (2011). The facts here lead to the inescapable conclusion that this is such a case.

### V.     CONCLUSION

Therefore, based on the foregoing discussion and analysis, it is the judgment of this Court Defendants' motion for summary judgment is **GRANTED**.

**IT IS SO ORDERED**.

Signed this 18th day of June, 2020, in Columbia, South Carolina.

> s/ Mary Geiger Lewis
> MARY GEIGER LEWIS
> UNITED STATES DISTRICT JUDGE